IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL WILLIAM BURKETT, JR., PRO SE, § | | |
| TDCJ-CID # 454882, § | | |
| Previous TDCJ-CID #272351, § | | |
| Previous TDCJ-CID #306565, § | | |
| Previous WA State # 742737 § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 2:09-CV-0185 | |
| § | | |
| BRUCE ZELLER, § | | |
| JOE GRIMES, § | | |
| MARY HOLLIGAN, § | | |
| F. EARLY, § | | |
| MAJOR CLARK, § | | |
| SERGEANT MAES, § | | |
| SERGEANT EDWARDS, § | | |
| RENALDO JONES, § | | |
| GLEN NAUERT, § | | |
| JESUS HERNANDEZ, and § | | |
| DR. OHEY, § | | |
| § | | |
| Defendants. § | | |

## REPORT AND RECOMMENDATION

This cause was originally filed in the United States District Court for the Southern District of Texas, Galveston Division, and was received on August 5, 2009 by transfer to the United States District Court for the Northern District of Texas, Amarillo Division.

Plaintiff MICHAEL WILLIAM BURKETT, JR., acting pro se and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendants and has been granted permission to proceed in forma pauperis.

Plaintiff alleges the defendants, except Dr. OHEY, failed to provide a safe environment.

Plaintiff alleges he arrived at the Clements unit in 2002.  Plaintiff says that, between 2002 and 2007, he filed approximately[1] 25 Life in Danger reports (LIDs) and 8 OPI documents.  Plaintiff does not define an "OPI" but the context suggests it relates to claims of endangerment.

Plaintiff further alleges he was approached by a member of the Aryan Circle prison gang in 2003 and was solicited to join them.  He says he refused and was harassed by the gang, but his requests for protective custody were denied by defendant HOLLIGAN.  Subsequently, plaintiff claims that, in retaliation for his LIDs and OPIs, "Bill Clements' unit administration began to house [plaintiff] in the same cell as know [sic] and/or confirmed prison gang members."

Plaintiff alleges that in 2005 he reported to defendant EARLY an escape plan being formulated by two Aryan Circle gang members and reported harassment by Aryan Circle gang members included death threats.

Plaintiff also alleges in 2005 he had a relationship of some sort with a female guard which led him to report defendant EDWARDS for sexual harassment.  Although the female guard eventually resigned, plaintiff says EDWARDS ordered defendant MAES to file a false disciplinary report on plaintiff, which he claims MAES did.  Plaintiff also alleges defendant JONES told plaintiff's cellmate at the time, inmate GONZALES, that plaintiff was a snitch.  Plaintiff says defendant NAUERT yelled out in the dayroom that plaintiff was "more of a guard than [NAUERT]."  Plaintiff says he was subsequently taken to defendant CLARK's office where CLARK made derogatory remarks about the relationship plaintiff had previously had with the female guard.

In March or April of 2006, plaintiff says defendant HERNANDEZ yelled out in the chow

---

[1] At paragraph 39 of his July 23 2009 Brief in Support, plaintiff alleges between 2003 and 2006, he filed 25 LIDs and 12 OPIs.

hall, "Damn, Burkett, who'd you snitch on this time to get moved again?"

Plaintiff alleges almost a year and a half later, on August 10, 2007, he was given a new cellmate, an inmate Haynes, who, he alleges, was a member of the Aryan Circle gang, and, on August 18, 2007, this cellmate attacked and beat him. Plaintiff says the attack occurred in their cell and lasted about twenty minutes until it was stopped by guards. During the attack, some or all of plaintiff's property was destroyed and about a third of his right ear was bitten off. Although the severed portion of his ear was transported with plaintiff to Northwest Texas Hospital, it was not reattached during treatment.

Plaintiff alleges after his return to the unit, no criminal charges were filed against his attacker. He complains his request for unit transfer was denied. The step 1 grievance No. 2007219129 attached to plaintiff's complaint contains a statement that, on August 24, 2007, he and Haynes ended up in cells in solitary that were across the hall from each other. The grievance response notes they were supposed to be housed in separate buildings. Plaintiff does not, however, make any claim of any harm resulting from this temporary mistake. Plaintiff alleges he was later housed with another member of the Aryan Circle and, later, with members of the Mandingo Warriors gang, but identifies no harm resulting from these assignments until December 5, 2007.

Plaintiff alleges, on December 5, 2007, he was attacked by his cellmate, a member of the Mandingo Warriors gang, and was sexually assaulted. After the assault, plaintiff was examined in the unit infirmary by defendant Dr. OHEY. Plaintiff states Dr. OHEY did not complete sexual assault documentation or any documentation established by the Safe Prison Program. He further alleges OHEY did not insure plaintiff was seen by the unit "Sexual Assault Nurse Examiner" pursuant to the Safe Prison Program. Plaintiff was transferred off unit in December 2007 but

complains that, to date, no criminal charges have been filed against his second attacker.

Plaintiff claims the defendants retaliated against him for his filing of LID reports and OPI documents and failed to protect him from known violent and/or predatory offenders, displaying deliberate indifference to his safety and health. Plaintiff also claims the defendants denied him due process by refusing to seek criminal charges against his assailants or requiring them to replace or compensate him for destroyed personal property.

Plaintiff requests a declaratory judgment; injunctive relief requiring that he be provided a safe environment, with adequate monitoring and appropriate housing away from those inmates posing a threat to his health and safety, and that acts of retaliation against him cease. Plaintiff also seeks monetary damages, both compensatory and punitive, as well as costs.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[2], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v.*

---

[2] A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

*Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[3].

The Magistrate Judge has reviewed plaintiff's pleadings and has viewed the facts alleged by plaintiff in his complaint to determine if his claims present grounds for dismissal or should proceed to answer by defendants.

## THE LAW AND ANALYSIS

Plaintiff's claims for injunctive relief are moot. He was transferred to another unit in 2007 and does not indicate any of the defendants are presently on this unit or in a position which would vest them with the authority to order the injunctive relief he requests.

There is no federal statute of limitations for civil rights actions; therefore, the two-year Texas general personal injury limitations period is applied. *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). Plaintiff filed the instant suit on July 21, 2009. Consequently, plaintiff's claims against defendants EDWARDS, MAES, JONES, and CLARK, the underlying incidents of which all occurred prior to July 20, 2007, are barred by limitations.

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not every injury "suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. 1970. Liability for an Eighth Amendment deprivation requires the same delinquency in denial of protection against harm from other inmates as it does for denial of medical care, *Johnston v. Lucas*, 786 F.2d at

---

[3]*Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

1259; thus, there must be an allegation of facts which will support deliberate indifference on the part of officials, *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The plaintiff prisoner must prove:  (1) he is incarcerated under conditions "posing a substantial risk of serious harm," and (2) that the defendant prison official's state of mind is one of "deliberate indifference" to the prisoner's health or safety.  *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot under our cases be condemned as infliction of punishment."  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811, 823 (1994).

Initially, the Court notes plaintiff has not specified which defendant or defendants he contends retaliated against him by his cellmate assignments.  Plaintiff simply identifies "the Bill Clements administration."  Plaintiff points to his 25 Life in Danger reports and 8 OPI documents, from 2002 to 2007, and contends these were "more than sufficient to alert the Defendants that a substantial risk of harm existed."  Plaintiff's Step 2 Grievance no. 2007219129 attached to his complaint, however, shows prison officials informed him no substantiating evidence was found and each request for a safe keeping transfer was denied.  Plaintiff has not provided the Court with what facts were contained in his LIDs and OPIs which would have placed officials on notice of the substantial danger to him, although plaintiff also argues that, were these reports and documents not enough, the first attack and the remarks of his first attacker to the effect that he was trying to kill plaintiff were certainly sufficient to show a substantial risk of harm existed.

A prisoner alleging an Eighth Amendment violation need not show that prison officials believed that harm would actually occur.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842, 114 S.Ct. 1970.  A

prison official's knowledge of the risk "can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it." *Johnson v. Johnson,* 385 F.3d 503, 524 (5th Cir.2004). A prison official, however, may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970. Furthermore, the mere negligent failure to protect a prisoner from assault does not comprise a constitutional violation. *See Davidson v. Cannon,* 474 U.S. 344, 347-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Oliver v. Collins,* 914 F.2d 56, 60 (5th Cir.1990).

Plaintiff does not disclose the content of his LID reports and OPI documents and does not identify anything in them which would have alerted prison officials to the fact that either inmate Haynes or inmate Kennebrew posed a substantial risk of serious injury to plaintiff before the attacks took place. If the LIDs and OPIs were conclusory, unfounded, or unrelated to plaintiff's attackers, or if no evidence could be found after an investigation which substantiated the risk plaintiff claimed, the number of LIDs and OPIs is irrelevant. Plaintiff has alleged no fact to bridge this gap. Therefore, whether plaintiff filed a single LID or OPI, or whether he filed a hundred, is not determinative. The information contained in his reports must be sufficient enough to lead to substantiating evidence to justify action by prison officials.

Plaintiff does not explain why the attack by inmate Haynes, allegedly an Aryan Circle gang member, indicates he would be in danger from inmate Kennebrew, whom he identifies as a Mandingo Warriors gang member. Nevertheless, plaintiff's allegation that, after being treated at the hospital for injuries from Haynes' attack, he was not supposed to be housed in the same building with inmate Haynes, shows prison officials were responsive to the threat presented by inmate Haynes and took steps, albeit imperfect, to protect plaintiff from further injury.

Plaintiff appears to be arguing the defendants are *per se* liable. That is, plaintiff wants to

establish by mere inference that any attack which occurs after a request for protection states a cause of action.  This is not the law.  Plaintiff must show prison officials knew, either through his LID's and OPI's or by some other means, facts indicating he was in substantial risk of serious harm and were deliberately indifferent to that risk.

Plaintiff points to public remarks by defendants NAUERT and HERNANDEZ in March or April of 2006 which he feels placed him in danger; however, he has not made any factual allegation showing any connection between those remarks and the attacks he suffered nearly a year and a half later.  Additionally, claims based on those remarks were barred by limitations at the time plaintiff filed the instant suit.

Plaintiff next points to remarks by defendant MAES and a Captain Benner, who is not a defendant in this cause, which, he says, illustrate deliberate indifference to his safety.  These remarks were made after the attack by Haynes, not before, and while they may be unprofessional, they do not constitute deliberate indifference to a serious risk of danger to plaintiff.  In one alleged instance, plaintiff said to defendant Sergeant MAES, the Head of the Security Threat Group Office, that Haynes was a "known member of a prison gang."  MAES reportedly laughed and responded, "He's a nobody."  In another instance, a Captain Benner, not a named defendant, laughed and remarked "It looks like he [Haynes] enjoyed being your cell partner."  Plaintiff argues these remarks show defendants treated the Haynes attack like a joke. While these remarks, if true, display an absence of empathy for plaintiff's pain and fear, they do not show deliberate indifference to known facts indicating substantial danger to plaintiff. Deliberate indifference is not displayed by a failure to sympathize with an inmate after he has been attacked; it is displayed by a failure to take reasonable steps when an inference has been reached by the prison official before an attack that the facts known to him or her indicate there is

a substantial danger to an inmate's safety.

Plaintiff's allegations fail to state a claim of deliberate indifference to his safety.

Although plaintiff's claims are deficient in other ways, the primary difficulty with plaintiff's allegations is that he does not identify any particular defendant(s) as being responsible for the attacks he has suffered. The Court does not condone physical assaults against inmates, but that does not mean an inmate who has been attacked has necessarily suffered a federal constitutional violation cognizable in a lawsuit. It simply is not enough that plaintiff was attacked. He cannot sue the State of Texas on a theory of *res ipsa loquitur* and, therefore, he must identify the defendant(s) responsible. Whether plaintiff's inability to identify those defendant(s) is because he doesn't know who was responsible or whether it is because no one is responsible to the degree that they were deliberately indifferent is not clear. What is clear is that plaintiff may not pursue a cause of action against individual defendants against whom he has not alleged sufficient facts to show deliberate indifference.

As it stands, plaintiff's claim of deliberate indifference implicitly relies on a conspiracy involving the ten guards and officials named as defendants. Otherwise, the claim devolves into a claim of mere negligence by the officials. Conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983, *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990); or to support claims of malice, *Al-Ra'id v. Ingle*, 69 F.3d 28 (5th Cir. 1995); or retaliation, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Further, a district court must insist that a plaintiff suing a public official under section 1983 file a short and plain statement of his complaint, which statement must rest on more than mere conclusions. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Plaintiff has failed to allege any material facts to support the

implicit claim of conspiracy.

Considering plaintiff's claim from the aspect of a negligence claim, the Court notes section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care. *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990); *see, also, Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986)(inmate slipped on pillow left on stairs). Where the alleged facts state, at most, a claim of mere negligence, they will not support a claim for relief under section 1983. *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

Plaintiff claims he has been denied due process by the defendants' refusal to seek criminal charges against his assailants or require them to replace or compensate him for destroyed personal property. There is no constitutional right to have a person criminally prosecuted. *See Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990). Therefore this claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As to plaintiff's property loss, that property loss was caused by another inmate. Two elements are necessary for recovery in this type of suit: (1) the plaintiff must show the defendant deprived him of a right secured by the Constitution and laws of the United States; (2) the plaintiff must show the deprivation was committed under color of law, usually by a state official or a private individual in conspiracy with such an official. *Adickes v. Kress*, 398 U.S. 144, 149, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Section 1983 does not cover claims against purely private parties, such as a fellow inmate, and, therefore, does not constitute a cognizable federal claim. *See Richard v. Hoechst Celanese Chem. Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003). It appears plaintiff may be claiming the defendants have somehow deprived him of due process.

To the extent plaintiff makes a due process attack, the Court notes Texas law provides an adequate post-deprivation remedy through the tort of conversion and, therefore, plaintiff's allegation fails to state a constitutional claim. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994).

Plaintiff claims he suffered retaliation for having filed 25 Life in Danger reports and 8 OPI documents from 2002 to 2007. To claim retaliation, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). To state a claim, the inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations of retaliation are not sufficient; the plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). A plausible entitlement to relief exists when the allegations in the complaint cross the thresholds separating the "conclusory" from the "factual" and the "factually neutral" from the "factually suggestive." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 n.5, 127 S.Ct. 1955, 1966 n.5, 167 L.Ed.2d 929 (2007). Moreover, causation requires the plaintiff show that but for the retaliatory motive, the adverse act would not have occurred. *McDonald*, 132 F.3d at 231. "The relevant showing in [retaliation cases] must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir.1997)(quoting *Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir.1995)). In this case plaintiff BURKETT has offered nothing more than his personal belief that his cell assignments

were the product of retaliation and has, therefore, failed to state a claim of retaliation under section 1983.

Lastly, the Court considers plaintiff's claims against defendant Dr. OHEY. Plaintiff alleges Dr. OHEY did not complete sexual assault documentation or any documentation established by the Safe Prison Program. He further alleges OHEY did not insure plaintiff was seen by the unit "Sexual Assault Nurse Examiner" pursuant to the Safe Prison Program. Plaintiff alleges Dr. OHEY had a duty to ensure that plaintiff be "provided with a complete forensic examination." The sexual assault alleged by plaintiff involved several alleged acts against him. Plaintiff alleges defendant OHEY examined plaintiff completely but only stated that he could tell plaintiff had been hit in the face. Plaintiff is not challenging the medical care he received from defendant OHEY. He is attacking OHEY's failure to fill out various forms mandated by state law or prison policy. The narrowing of prisoner due process protection announced in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), leaves plaintiff without a federally-protected right to vindicate this requirement. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional minima. *See, e.g., Murray v. Mississippi Dept. of Corrections*, 911 F.2d 1167, 1168 (5th Cir. 1990); *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir.), *cert. denied*, 489 U.S. 1085, 109 S.Ct. 1545, 103 L.Ed.2d 849 (1989); *Baker v. McCollan*, 433 U.S. 137, 146-47, 99 S.Ct. 2689, 2695-2696, 61 L.Ed.2d 433 (1979). Moreover, since plaintiff was transferred as a result of the second assault, he does not claim any injury flowing from this alleged failure by OHEY. Plaintiff's claim against defendant OHEY lacks an arguable basis in

law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

The instant case presents the Court with a difficult and distressing issue: an inmate who unsuccessfully requested protection and suffered subsequent attack. Nevertheless, the fact of one or even more attacks does not, by itself, support a claim of deliberate indifference. The inmate must identify one or more prison officials having knowledge of facts indicating the inmate was housed under circumstances creating a substantial risk of serious harm and ignored those facts. The key is not the number of life endangerment reports or other documents filed with prison officials but whether any one or more of these reports contained sufficient information which led officials to evidence indicating the unsafe condition of confinement. Plaintiff has failed to show any one or more of the defendants had knowledge of such facts and ignored them.

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1), it is the recommendation of the Magistrate Jude to the United States District Judge that the Civil Rights Claim filed pursuant to Title 42, United States Code, Section 1983, by plaintiff MICHAEL WILLIAM BURKETT, JR., be DISMISSED WITH PREJUDICE AS FRIVOLOUS AND WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 21st day of January, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).